The last matter on our calendar is Choi v. Tower Research Capital. Choi and others. You may proceed, counsel. Good morning, Your Honors. My name is Michael Eisencraft, and I represent plaintiffs' appellants in this matter. There are three issues before this court, three errors by the district court. First, the district court determined that there was no irrevocable liability where the transactions took place in the United States in Spithleen, Aurora, Illinois. And in fact, in our pleadings, we identified, we plausibly plied in no less than three different ways that actually irrevocable liability did occur here. Second, the district court determined that the CME Globex, one of the premier derivatives exchanges in the world, is not a domestic exchange. We believe that's error. And third, that a 99.99999% chance of the plaintiffs and the defendant having a trading relationship did not suffice to plausibly allege a trading relationship sufficient for unjust enrichment purposes under Rule 12b-6. I'd like to focus the court on- The question I have in this is when did liability attach? That is, when was a plaintiff bound to pay and a defendant bound to sell? As soon as there was offer, agreement, and consideration, which is at the time when the trades were matched. It's just a standard contract. That took place in Aurora, Illinois. It's not in Korea. Correct, Your Honor. That's your argument, correct? But the question I have is, that's not true in Korea. In Korea, there had to be a final settlement, right, on the KRX? No, Your Honor, that's actually not true. I thought there was a difference between the way the American law looked at it and the Korean law, or the way the contracts were interpreted, the arrangement was interpreted. No, Your Honor. What happened there was defendants in their brief asserted that there was a difference, and they cited a webpage for the KRX. But the district court should not have considered that, A, because it's outside the pleadings. B, it's contradicted by this CME Globex's rules. But C, it's just not true. As we explain in our brief on footnotes 22, 24, and 25, the KRX rules are exactly the same. Obligation to the buyer and seller occurs at the time the transaction was matched. What they're referring to is where the exchange's liability as a clearinghouse comes into play, and that's when the trade clears. But the preexisting, that assumes a preexisting liability. There is one, Your Honors. Yeah, the liability between the buyer and seller, the buyer to pay the price, the seller to deliver the security occurs when there's offer and acceptance. That's just, that's rules everywhere. But at bottom, your argument rests on the following. In order to determine whether liability attaches irrevocable or not in Illinois, we also have to look at the CME rules. Is that correct? The rules for CME Globex where the transaction takes place. And so then we've got to determine whether those rules even apply to these trades. Is that correct? Well, I mean, we plead so in the complaint. I understand what you plead, but is that correct? I'm just trying to figure out the analytical tree here. Ultimately, we've got to figure out if the CME rules apply to these trades. That's how on the liability side of the ledger we determine whether liability attaches in Aurora, Illinois. Well, Your Honor, I mean, what I'm trying to say is that under each path, whether your CME rules apply or the KRX rules apply, you can lead to the same place. It's where the price is agreed upon and the offer and acceptance were made under both sets of rules. You arrive at Aurora, Illinois. That's why there is a night market. That's why they didn't, you know, it took place here. So it doesn't matter whether you use CME's rules or the Korean Exchange rules. You arrive at the same place. Are you saying that if there's a, if the obligation to, if the obligation to pay occurs as a result of the matching, that it doesn't matter if that's in the United States? It doesn't matter whether the CME Globex is an exchange? Correct. There are alternative problems, Tess. You only need to meet one of the two. So if this court determines that irrevocable liability occurred here, you can just do a full stop and reverse your match. Where in your allegation do you say that under the Korean rules liability attaches based on matching? Well, that's the thing, Your Honor. We plead in our complaint that CME rules apply and then under CME rules it matches. We did not, you know, defendants pointed to and something that should not have been considered under motions. You just told me that we can get at this in two directions, but all I have in this complaint is one direction. CME rules apply and they tell us that liability attaches when there's a match. Right. Well, what I'm saying, Your Honor, is in footnotes 22, 24, and 25 of our brief, we did the research. The KRX's rule is the same. We didn't bring that up at the court below because we had no reason to. It's a motion to dismiss pleading. We asserted that the CME rules applied. And to get pass and motion to dismiss where all inferences are in our favor, we only had to, I mean, it's where the transactions took place. So it's not on the record below, but the facts are there. The KRX's rules are the same. So why don't we focus on the CME rules in their application? Sure. Yeah, under the CME rules, you know, it says so. And what we did was we did three things. We looked up at the CME website and they said, you know, irrevocably binding when made. Then we called the CME. In fact, we called the person in charge of this KRX product for the CME and he said, yes, transactions are binding when made. And then we called the CME Globex's help desk and they said the exact same thing. So three different sources all saying the same thing on a 12B6 motion. It's more than plausible. The fact that we had belt suspenders and a second set of suspenders, Your Honors. I submit that should be sufficient. This is basic contract law. Liability attaches when there's a meeting of the minds. Exactly. It seems to us very simple. Well, it's obviously not simple. Complicated case in front of us. But if you cut it down to what's at stake and what we have to decide is when does liability attach. Right. If it attaches in Aurora, you prevail. If it attaches in Korea, you lose. Correct? Correct, unless the CME Globex is determined to be a domestic exchange. And Your Honors, in fact. Do you not concede that the CME is not a domestic exchange? Oh, no, no. We assert it is. It's not registered as an exchange. Correct, but it follows the rules of registered exchange, the CME. And under the CME regulations, the definition of exchange is broader than of a registered contract market. Like registered contract market is a subset of exchange. And this is not some, you know, small, obscure market. This is one of the major derivatives exchanges in the world. The fact that it's under economics definitions, the CME definitions, under, you know, plain language definitions, it's an exchange. And it's indisputably domestic. So we would assert that under both prongs. So are there two exchanges involved here from your perspective? Yes, the CME Globex and the Korean exchange. And when it comes to settlement, which is the only thing the Korean exchange does here, this court recently ruled in Petrobras that settlement, which is the only role the Korean exchange plays here in clearing, does not determine the situs of a transaction. The purposes of Morrison? Yes. Yes, Your Honors. Mr. Isencroft, you've retained two minutes for rebuttal. We'll hear from Tower. May it please the Court. Noah Levine for the defendants. I want to answer the questions about where irrevocable liability attaches. But before I do that, I want to take one step back in what we're trying to answer in this case. The guiding principle of the Morrison decision is that regulation of transactions on foreign exchanges would be an impermissible extraterritorial application of United States law. We think that that principle decides this case. Here we have foreign plaintiffs suing about foreign-issued futures contracts that were traded on a foreign exchange. What plaintiffs are trying to say is they want to elude Morrison by saying that because the Korean exchange uses the computers of the CME Globex to match orders that were submitted in Korea on the Korean exchange, before those come back to Korea, not just for settlement, for clearance, which is important, an important step of the contract, for the Korean exchange to step into the shoes of the parties. And that is the binding commitment that comes out of any trade on an exchange. I don't have any commitment to the person who takes the other side of a trade when we're trading on an exchange. I don't even know New York Stock Exchange, whatever exchange you say. I'm trading with an exchange. Isn't that when liability attaches, when the match is made? No, I disagree with that because what we have to ask is what is the contractual commitment that arises out of a trade on an exchange? The contractual commitment that arises is a commitment to the exchange. It is not a commitment to the counterparty. What they're trying to do is go under the hood of an exchange trade, a foreign exchange trade at that. Would you explain to me what we meant by irrevocable liability in absolute activist? Sure. Absolute activist is not a case about exchange trading or foreign exchange trading. It's about purchases directly between parties of U.S. penny stock. We strongly disagree that the absolute activist irrevocable liability test was meant to apply in a way that would undermine the guiding principle of Morrison, which is if you're trading on a foreign exchange, that's impermissible extraterritorial application of U.S. law. For example, there's nothing in absolute activist that says you should dissect the anatomy of a foreign exchange trade to try to find the spot during that trade when there is irrevocable liability or contractual commitment. They don't talk about dissecting. They just say irrevocable liability is meant to refer to the moment, this is from activist, when the parties become bound to effectuate the transaction. I agree with that, and I want to explain on both parts here. I want to explain why there's no irrevocable liability but also why we don't think that the test should apply here. We don't think it should apply. What we think is it's basically if you're going to apply the test here, it ought to be like this court's decision in the city of Pontiac. In that case, what you said was the court said twice, look, the Supreme Court emphasized that the Exchange Act was not meant to regulate transactions on a foreign exchange. You said, look, the Supreme Court said there's no national public interest in regulating those trades on a foreign exchange. And then what you said, very specifically, was that while in the context of securities that are not traded on a foreign exchange, the place where the buy order is made is important. That is not important. It is insufficient, quote, in the context of transactions in foreign securities on a foreign exchange. And my submission first is that you shouldn't take the absolute activist irrevocable liability test and apply it in a way that says let's dissect each step of a foreign exchange trade and figure out whether it applies. Now, as to your question, Judge Blore, I don't – I want to get back to it and I want to make sure I'm answering it. The reason is you have to ask – you can't just say when is there a binding commitment. You ask when is there the binding commitment to buy or sell. When I conduct an exchange trade, for example, let's take the parties here, the defendant Tower and the first name plaintiff Choi. If they happen to have been matched by the CME Globex and let's say that Tower doesn't deliver the money, Mr. Choi cannot sue Tower. He has no binding commitment to Mr. Choi. This is an exchange trade. The binding commitment that happens is to the exchange. That happens in Korea. The very rules that he – that my colleague is saying that they are – that they did the research and cited. Every trade then? Of exchange trades, absolutely. You're saying that in every exchange-based trade, if it's on a U.S. exchange, a national exchange, the only avenue for – as a more so matter for a plaintiff to pursue is the exchange, not the irrevocable liability. You seem to be – No, I'm not saying that at all. I'm saying – no, I'm not. I'm saying that the irrevocable liability happens in Korea. That is where under the Korean exchange's rules, if you look at the – it's Part 3, Chapter 4. It's in the appendix. I believe it's at – it's somewhere around A430. That's the declaration that it's in. It says that's where the exchange steps into the shoes of each party. That's where you novate, in essence. You ask the question, isn't it rely on a preexisting obligation? I'm not fighting the fundamental logic that the reason my client has an obligation to the exchange is because they were matched. But innovation doesn't occur until settlement. Not until clearance. It's clearance. That's right. Settlement really is a different point. It doesn't occur during the match. That's correct. That's what your position is. That's correct. It happens. And if we disagree with you about that, then what do we do? If you disagree with us on that, I still think, for the reasons I've said, the absolute activist test shouldn't – the irrevocable liability test should not be applied in the context where you have a foreign exchange trade. The Second Circuit – Of course, the allegation and the complaint, if we took that – took those allegations, I should say plural, as true, suggests that there is a meeting of the minds and an obligation that occurs upon the matched trading. The allegations in the complaint are quoting rules of the CME. There are no such thing, as my colleague said, rules of the CME Globex. They are quoting rules of the Chicago Mercantile Exchange that govern trades that happen on the Chicago Mercantile Exchange. You can look at the website where the rulebook is found. And if – to really prove this point, go find the website that they – that the block quote in paragraph 21 comes from. It's not even to the Chicago Mercantile Exchange. It's to the Chicago Board of Trade, an entity that not even they allege has any relevance in this case. That's because each exchange that uses Globex has its own set of rules about what that means. If you want to know what it means to be on Globex in the context of the Korean exchange, look in the appendix at A430. Those are the Korean exchange rules that have a specific section on the use of CME Globex. And one more point. I just want to make sure I make this because it's not really clear in our brief. There's another reason why the absolute activist test should not apply in this case, which is a Commodities Exchange Act case. Morrison was a statutory interpretation case about Section 10B of the Exchange Act. The two prongs – the second prong of Morrison, which is purchase or security – I'm sorry, purchase or sale of a security in the United States was based on the language of 10B. 10B says that it prohibits manipulation in connection with the purchase or sale of a security on a national registered exchange, national securities exchange, or any other security not so registered. That's what the second prong is applying to. There is no application in this case. The provision in this case is that manipulation is prohibited in connection with any contract for future delivery on or subject to the rules of any registered entity. There is no second phrase that says, or any other futures contract. An absolute activist was interpreting the specific statutory language, purchase or sale of a security, in Section 10B. There's no such language in the CEA provision at issue here. Yes, I'm sorry, Judge Poole. Are you suggesting that the rules of the various exchanges take precedence over basic contract law about when a contract is made? No, what I'm saying is that each exchange has rules about how trades are conducted. And so if I submit a limit order, which is how futures contracts are done, to say, I will purchase 100 of these contracts at $2, I'm not talking to anyone specifically. Normal contract law, that's over-the-counter trading, when I would specifically engage in a trade with a specific party, and I would say, I see your offer, and I accept it. That's not how trading on an exchange works. I put in my limit order. If the exchange identifies somebody who will take the other side of that position, not because they know of my order. The exchange matches those. The exchange matches them and then steps into their shoes. The reason exchanges exist, one important reason is you don't want counterparty risk. I don't want to know, I don't want to have to do the research on Mr. Troy doesn't want to have to do the research on Tower. Tower doesn't want to have to do the research on Mr. Troy to find out whether he's a good credit risk. I'm entering into a contract with an exchange. So I'm not saying that it displaces contract rules. What I'm saying is you have to find out what is the contract that comes out of all of this. And the contract that comes out of an exchange trade is a contract with the exchange. If Tower fails to perform, the exchange goes after them. That's also in the Korean exchange rules, which we've cited in our papers. Why isn't that the liability that we're talking about? That is the liability, and that happens in Korea. That happens in Korea. I'm sorry. That's exactly the liability. Is there not some liability to the exchange? There is, and that happens in Korea. The exchange does not step into shoes. Obviously, the exchange doesn't step into the shoes of the parties through the rules of the CME. It's the Korean exchange, and that happens in Korea. Look at page A101. This is a document, a website page, that they cited at footnote 10 of their brief. It explains all of this very clearly how it works. It says that order routing, the very first part of the trade, so the offer and acceptance, Judge Pooler, happens in Korea. It has to go through Korea. It has to go through a KRX member firm. So if you're going to assume the fiction that people who don't know about one another are nevertheless offering and accepting, that offer and that acceptance is made in Korea. In the night trades. In the night trades. That's where it has to happen. That's what this document explains in the night trades. Then they come over to CME. That's just a computer that matches it for the exchange to figure out which ones match. All these offers and acceptances are happening over there, if we're going to use contract lingo, and then it's matched there. Then it comes back. What it explains is KRX self-clears. So all trades executed on the CME Globex, again, this is page A101, will be transferred to KRX for position management and credit controls and also be consolidated with the trades of the regular session on the following trade date for clearing and settlement. And clearing is where this is where the binding commitment with the exchange comes into place. It's the clearance. That's in the rules that we have cited. They're at A436 to A482. That is Chapter 4 of Part 3 of the Korean Exchange's rules that are on clearing and settlement of a trade, and that's when the exchange steps in. Is Tower a member of the CME? No. Tower has to trade through a – I'm sorry, did you say CME? I don't know. That's not alleged, and I actually don't know. They're not a member of the Korean Exchange is what I meant to answer. They have to trade through a Korean Exchange member firm. I think it's – I want to be clear. I don't think you noticed, Judge Loyer, there is no allegation in this complaint that the CME rules apply to trading on the Korean Exchange, and that is what Judge Wood said. She said you haven't alleged that. There is nothing here to give any meaning that says these rules apply. So there's nothing. And I think basic logic shows it, too. If you go and you look at the CME Group website, they all apply to the individual exchanges. The rule that they cite is a Chicago Board of Trade rule. It's not even a Chicago Mercantile Exchange rule. And the orders that they – the rules that they quote in their brief are all rules that talk about how, when an order is submitted on the CME, what has to happen. And the Korean Exchange rules and the document that they cite, which is at A101 of the appendix, very clearly explain that when KRX trading happens on the CME, orders do not go to the CME. As A101, the document they cite, explains, customers' direct connection to CME Globex is not available. Direct market access is not allowed for any KRX product under the Korean regulations. It has to go through the hub in Seoul. Your time has long expired. I apologize. If there are no further questions, we'll rest on our brief. Thank you. Mr. Eisencraft. What's wrong with his argument? A few things, Your Honor. First of all, I just don't want us to lose track of this. This is a 12B6 motion. He's promulgating an alternative view of reality that's at odds with the view we plead in the complaint, one. So this shouldn't even be considered. This is a summary judgment argument here. Two, what he does not deal with and can't deal with is the fact that we called the CME Globex's representative who deals with the KRX products, and we asked, where does the transaction bind? Is it binding at the time of matching? And he said, yes. And we allege that in the complaint. That is more than enough to get past a 12B6 motion. You allege that on a 12B6. That's enough. Yes. That's what you're saying. We asked the exchange or whatever they want to call it, the CME Globex, where the trades took place. Is it binding at time of matching? And they said, yes. I don't know what more we need to do on a 12B6 motion. That should be more than sufficient. If it's binding, that's where the contract is formed. Yes. And this argument about the exchange, what happens with clearing and settlement, was recently rejected by this court in Petrobras, which is 862F3D250, where this court held, we reject plaintiff's argument that a securities transaction is domestic under Morrison, an absolute activist, if it settles to the DTC, and that's the clearing organization of the United States. In other words, if someone in Korea settles a trade on the Korean exchange and somehow gets settled on the DTC, that doesn't mean it didn't happen in Korea. Just as here, settlement is relevant. They're talking about dissecting transactions. There's only one point in this transaction that counts. Under standard contract law, it's where the deal is made. This is an electronic trading pit. But your adversary is saying that we should consider the notion that the liability, that the trade is made with the exchange, that is, the Korean exchange, not with the ultimate counterparty. Right, and that argument was specifically rejected a few months ago by this court. I don't know that it was. What about Petrobras says that? It says that that's wrong. It says in footnote 24 that you cannot determine that a transaction is domestic under Morrison if it settles to the DTC. In other words, absolute activist is identifying a single point which determines whether a transaction is made. What you say in Petrobras is that point is not settling. It's not clearing. It is where the transaction is made. Settling is not part of this. And also- But on a practical level, aren't you trying to undo a part of Morrison? No, we're following Morrison for the letter. And that's what's- Morrison has a two-pronged test. We meet the test. It's a bright line rule. We are to the right side of that bright line. Moreover, I think more broadly- I like his argument that the two-part test in Morrison doesn't strictly apply because the regime here is different from 10b-5. And the 10b-5 dealt with a situation where you would either be on an exchange or would not be on an exchange. And here we've got to trade on an exchange. And therefore, that second prong doesn't apply. Well, Your Honor, first of all, this Court has held that Morrison does apply to CA claims. Second, in Morrison itself, it was a transaction, a foreign exchange that was analyzed, specifically the Australian exchange. Yeah. So they did a two-part test there, they said. Oh, it was an exchange situation. Right. And here it's also an exchange situation. The CME is an exchange. But Morrison, the second prong of Morrison, which is that there's a binding commitment or a binding commitment, makes sense in the 10b-5 context because you do have under Rule 10b the possibility of a non-exchange transaction. And here we don't have that. Well, the CA does permit not only registered contract markets but also trades on exchanges subject to the rules of registered contract markets. And we believe it's clear that the CME – I mean, just to explain, Your Honor. I mean, the CME Globex, if defendants' position were correct, the CME Globex would be illegal. Like, those trades wouldn't be permissible under the Commodity Exchange Act. And this is an enormous exchange that trades a lot of commodities. It's subject to the CA, trades on the CME Globex. Well, okay. Your adversary makes a different point. You're just a tool. You're just a computer. The trade is in Korea, and that's where everything occurs. But, you know, we'll figure it out. You're relying on a statement from the CME someone. Well, there's the statement from the CME, the statement on the CME's website, and the statement from a second person at the CME. It's a motion to dismiss, Your Honor. That should be more than sufficient. Okay. The next case, thank you, will reserve decision. Very good argument. The last case on our calendar is on submission, so I will ask the clerk to adjourn the court. Court is adjourned.